**STATE v. HEATH. (No. 2249.)**

(Court of Civil Appeals of Texas. Texarkana. March 25, 1920.)

Taxation ⬤⎯589—Act requiring collectors to give notice of delinquent taxes and suit to be brought not later than time fixed held not limitation against state.

Acts 1915, c. 147 (Vernon's Ann. Civ. St. Supp. 1918, art. 7687a), providing that not later than May 1, 1916, in all counties of less than 50,000 inhabitants, and not later than May 1, 1917, in all counties of more than 50,000, and not later than June 1st in every following year, it shall be the duty of the collector of taxes to mail notices to every record owner of the amount of tax appearing delinquent, and that not later than January 1, 1917, in counties of less than 50,000 inhabitants, etc., it shall be the duty of the county attorney to file suits for collection of delinquent taxes, does not place any limitation on the right of the state to collect delinquent taxes, but is intended merely to fix the duties of the tax collector and county attorneys, for otherwise the state might lose taxes by delay of the tax collector in sending notice, though the bond of such officials does not cover such loss; this conclusion being strengthened by the fact that the caption of the act did not show that it was intended as a limitation act.

Appeal from District Court, Madison County; E. A. Berry, Judge.

Action by the State of Texas against J. N. Heath. From a judgment sustaining demurrers to the petition and dismissing the action, the State appeals. Reversed and remanded.

Lewis & Dean, of Navasota, for the State.
Carl T. Harper, of Madisonville, for appellee.

HODGES, J. This appeal is from a judgment sustaining demurrers and dismissing a suit filed by the state of Texas against J. N. Heath for the collection of delinquent taxes. The petition alleged, in substance, that the taxes sued for were due on the unrendered rolls of Madison county; that the delinquent tax lists of Madison county had been duly and legally published in accordance with the law; and that prior to the institution of the suit, to wit, on the 18th day of January, 1917, the tax collector of Madison county had mailed to the address of the record owner a notice showing the amount of taxes appearing due upon the delinquent tax record against all such lands according to the delinquent tax records of that county on file in his office, the notice containing a brief description of the lands and the various sums due as taxes for each year they appeared to be delinquent according to such records. The petition was excepted to upon two grounds: First, that according to its averments the no-

tice to the record owner was mailed after the time prescribed by law; and, second, that the petition showed that the suit was filed after the date fixed by law for the filing of suits for taxes accruing prior to 1915. The court sustained both of those exceptions, and, upon the failure of the plaintiff in error to amend, the suit was dismissed. The assignments of error present for review the ruling of the court upon those two exceptions.

In 1915 the Legislature enacted the following statute (Laws 1915, c. 147), which appears as article 7687a of Vernon's Texas Ann. Civil Statutes Supp. 1918:

"Section 1. Not later than the first day of May, 1916, in all counties of less than 50,000 inhabitants, and not later than the first day of May, 1917, in all counties of more than 50,000 inhabitants, and not later than the first day of June in every year following thereafter, it shall be the duty of the collector of taxes in the various counties of this state to mail to the address of every record owner of any lands or lots situated in such counties, a notice showing the amount of taxes appearing delinquent or past due and unpaid against all such lands and lots according to the delinquent tax records of their respective counties on file in the office of the tax collector, and a duplicate of which shall also have been filed in the office of the comptroller of public accounts of the state of Texas and approved by such officer; such notice shall also contain a brief description of the lands or lots appearing delinquent, and various sums or amounts due against such lands or lots for each year they appear to be delinquent according to such records, and it shall also be the duty of the tax collectors of the various counties in this state not later than the dates named, and every year thereafter, to furnish to the county or district attorneys of their respective counties duplicates of all such statements mailed to the taxpayers in accordance with the provisions of this act, together with similar statements, or in lieu thereof, lists of lands and lots located in such counties containing amounts of state and county taxes due and unpaid, and the years for which due, on lands or lots appearing on such records in the name of 'Unknown' or 'Unknown Owners,' or in the name of persons whose correct address or place of residence in or out of the county said tax collector is unable by the use of due diligence to discover or ascertain; and it shall be the further duty of the tax collector to furnish on demand of any person or persons, firm or corporation, like statements with reference to any particular lot or tract of land for whatever purpose desired, which shall be in all instances certified by him with the seal of his office attached; said notices or statements herein provided for shall also recite that unless the owner or owners of such lands or lots described therein shall pay to the tax collector the amount of taxes, interest, and penalty and costs set forth in such notice within 90 days from the date of notice, then, and in that event, the county or district attorney will institute suits not later than January 1, next, for the collection of such moneys, and for the foreclosure of the constitutional lien existing

⬤⎯For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

against such lands and lots; and whenever any person or persons, firm or corporation shall pay to the tax collector all of the taxes, interest, penalties and costs shown by the records aforesaid to be due and unpaid against any tract, lot or parcel of land for all of the years for which said taxes may be shown to be due and unpaid, then it shall be the duty of the tax collector to issue to such person or persons, firm or corporation a redemption receipt covering such payment as is now required by law."

"Sec. 3. Not later than January 1, 1917, in counties of less than 50,000 inhabitants, and not later than January 1, 1918, in counties of more than 50,000 inhabitants, and not later than June 1 of each year thereafter, it shall be the duty of the county attorney, or the district attorney if there be no county attorney, to file and institute suits as otherwise provided by law for the collection of all delinquent taxes due at the time of filing such suit on land or lots situated in such county, together with interest, penalties and costs then due as otherwise provided by law." (Vernon's Ann. Civ. St. Supp. 1918, art. 7688a).

The petition and its accompanying exhibits showed, in addition to the facts above stated, that the taxes sued for were assessed against "Unknown Owners" for the years 1885, 1886, and 1887. The question presented by the assignments is: Does the state lose its right to sue for the recovery of delinquent taxes due for the years above mentioned because the tax collector failed to mail the notice to the record owner on or before the 1st day of May, 1916, or because the county attorney failed to file suit on or before January 1, 1917? In other words, did the Legislature in the enactment of that law fix a period of limitation for the collection of back taxes due the state and counties? We are of the opinion that no such purpose was intended. In a recent case, Hunt v. State, 217 S. W. 1034, the Supreme Court held that giving to the record owner the notice provided for in the first article of the statute quoted is prerequisite to the right of the state to file a suit for the collection of the delinquent taxes. It did not, however, decide that it was essential that such notice be given "not later" than the dates above mentioned —that is, May 1, 1916, or May 1, 1917— when the suit was for taxes prior to the taking effect of that law. Madison county had a population of less than $50,000. The law made it the duty of the tax collector of that county to mail the notices not later than May 1, 1916, and not later than June 1st of each year thereafter. The trial judge construed the statute as one limitation—that is, as fixing May 1, 1916, as the end of the period within which legal notice could be given to the record owner of lands on the delinquent list prior to the taking effect of that law; and January 1, 1917, as the limit of the time for filing the suit. The importance to the state of retaining its sources of revenue is such that no such construction should be placed upon the statute if its terms are susceptible of any other reasonable interpretation. If the Legislature intended by the enactment of that law to fix a period of limitation upon the right of the state to sue for the collection of delinquent taxes, no such purpose is disclosed in the caption of the original act. The caption is as follows:

"An act making it the duty of tax collectors to prepare and mail notices and statements of delinquent taxes to the owners of real estate; prescribing the time in which such notices or statements shall be mailed and the manner in which they shall be prepared; providing for the perfecting of the delinquent tax records of the various counties, and making it the duty of the tax collector to prepare such records in certain instances together with supplements thereto; making it the duty of the county and district attorneys to file and institute suits for the collection of delinquent taxes; providing for the issuance of redemption receipts and other statements by the tax collectors and for the approval of tax records by the commissioners' court and the comptroller of public accounts; providing reasonable compensation for the additional duties prescribed in this act for county officers; making the provisions of this act mandatory; repealing all laws and parts of laws in conflict herewith, and declaring an emergency."

It is a matter of common knowledge that for many years officers charged with collecting delinquent taxes have failed to promptly discharge those duties, thereby permitting the accumulation of large amounts of back taxes which the state has not heretofore seen fit to release; that habitual neglect of duty not only deprived the state and the counties of much revenue, but frequently resulted in the embarrassment of purchasers of lands against which such taxes had been assessed when the state undertook, after years of delay, to enforce collection. It was to meet and correct that condition that this law was enacted., It will be observed that after directing that notice shall be given by the tax collector "not later" than the dates mentioned, and that suits shall be filed by the county or district attorney "not later" than other fixed dates, the law prescribed a penalty for the failure of these officers to perform their duties. A part of that penalty is removal from office. While those officers are required to give bonds for the faithful performance of their duties, the statute does not undertake to make any of them liable upon their bonds for the losses which their dereliction might cause the state or the county by reason of the nonperformance of those new duties. The statute expressly repeals only article 7707, which was enacted some years ago for the purpose of enabling counties to employ special attorneys for the collection of delinquent taxes and to contract for the payment of their compensation from a part of the taxes collected. No attempt is made, other than what might result from implication, to repeal any of the provisions which

expressly provide for the right of the state to collect all back taxes accruing since the year 1885, or those which exempt the state from the bar of limitation in the prosecution of suits generally. By virtue of its sovereignty the state does not come within the ordinary statutes of limitation, and its right to institute and prosecute suits is, under the common law, unrestricted until limited by express provisions of some statute.

When carefully considered, the language of this statute does not justify the construction that it fixes a period of limitation upon the right of the state to collect delinquent taxes. Let us suppose, by way of illustration, that in this case the tax collector in office at the time these notices should have been mailed, under the provisions of the statute, had for some inexcusable reason failed to perform that duty, and that he had been removed from office because of that failure. His successor when appointed would find that the taxes here sued for still appeared upon the delinquent tax records on file in his office as delinquent. He would also be apprised of the fact that no notice had been mailed to the record owner as required by law. The statute itself then points out his duty under those circumstances. After fixing May 1, 1916, and May 1, 1917, it says:

" * * * And not later than the first day of June in every year following thereafter, it shall be the duty of the collector of taxes in the various counties of this state to mail to the address of every record owner of any lands or lots situated in such counties, a notice showing the amount of taxes appearing delinquent or past due and unpaid against all such lands and lots according to the delinquent tax records of their respective counties on file in the office of the tax collector," etc.

Having found that these taxes appeared delinquent on his records, it would be the duty of the tax collector to mail the notices to the record owners not later than the 1st day of the following June.

Under the express terms of the statute, every tax collector who now goes into office is charged with the duty of mailing the required notices, not later than the 1st day of June following his induction into office, to the record owners of all lands which then appear delinquent upon his records and who had not previously been notified, regardless of when the delinquency occurred. He has no right to separate the taxes which became delinquent prior to the enactment of the statute from those which became such since that time, and confine his notices to the latter group. The failure of his predecessor to perform a duty does not relieve the present incumbent from the consequences of a similar dereliction. The use of the term "not later" than the dates mentioned in the act, in our opinion, does not fix the end of a period within which legal notices may be given for all taxes then appearing delinquent, but was designed as fixing a period beyond which the tax collector could not delay the performance of that duty without incurring the penalties of the statute. To hold otherwise would not only ignore the terms of the statute, but would put it within the power of defaulting tax collectors and county and district attorneys to defeat the rights of the state and the several counties in the collection of a considerable portion of the revenue to which they are entitled. It will be observed that this statute is not by its terms made applicable to cities and towns. If the Legislature had intended to fix a period of limitation for the collection of back taxes, in order to avoid disturbing land titles, it is not likely that it would have confined that limitation to the state alone.

What has been said with reference to the mailing of notices is equally applicable to those provisions which relate to the filing of suits by county and district attorneys for the enforcement of tax liens.

We are aware that the honorable Court of Civil Appeals for the Fourth District, in the case of State v. Seidell, 194 S. W. 1118, has held to the contrary of the conclusion we have reached in this case. It is with some reluctance that we have disagreed with a court for which we entertain a high regard. The Seidell Case has not been passed upon by the Supreme Court. Until that court holds otherwise, we feel constrained to adopt the construction announced above.

The judgment of the court below will be reversed, and the cause remanded for trial on its merits.